UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CHRISTOPHER CHUNN,                          :

                        Plaintiff,          :      14 Civ. 6140 (PAC)(HBP)

        -against-                           :      REPORT AND
                                                   RECOMMENDATION
AMTRAK, et al.,                             :

                        Defendants.         :

-----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE PAUL A. CROTTY, United States District

Judge,


I.   Introduction


            Plaintiff, Christopher Chunn, brings this action pro se

against defendants Amtrak, Amtrak Officer Looney[1] and Officer

Coleman (the "Amtrak Defendants"), Drug Enforcement Agency

("DEA") Officers Alex Colon, John Hannon and a John Doe supervi-

sor, to recover money that was confiscated when plaintiff was

arrested in 2011 (Amended Complaint, dated November 28, 2014

(Docket Item 16) ("Am. Compl.")).  The Amtrak Defendants have

_____

        [1]The Amtrak Defendants refer to P.O. Looney as P.O. Loney in
their brief.  I shall refer to the defendant as P.O. Looney, the
name used in the Amended Complaint.

moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Notice of Motion, dated December 26, 2014 (Docket Item 24)).  For the reasons set forth below, I respectfully recommend that the Amtrak Defendants' motion be granted in part and denied in part.

II.  Facts

        Plaintiff was arrested in New York's Penn Station by Amtrak Police Officers Coleman and Looney on September 15, 2011 for assault and resisting arrest (Am. Compl. at 4).[2]  At the time of his arrest, plaintiff had approximately $10,000 in cash in his front pocket, as well as a bank receipt reflecting the withdrawal (Am. Compl. at 4, 9, 11).  Officers Coleman and Looney confiscated the money and the bank receipt at the time of plaintiff's arrest (Am. Compl. at 4).  The officers told plaintiff that he could return to pick up his money when he was released (Am. Compl. at 4).

        After his release, plaintiff returned to Penn Station to pick up his money, but he was told that the DEA had confiscated the money (Am. Compl. at 4).  An Amtrak employee further

_____

        [2]Because plaintiff's Amended Complaint is not serially paginated, I use the page numbers assigned by the Court's ECF system.

2

explained to plaintiff that he would receive a letter explaining how to reclaim his money (Am. Compl. at 4).  Plaintiff alleges that he never received any such letter (Am. Compl. at 4).

Plaintiff alleges that he sent several letters to various entities requesting their assistance in securing the return of the money, but that he never received a response (Am. Compl. at 6).  He alleges that he sent several letters to the DEA requesting his money (Am. Compl. at 6).  He also wrote to the former United States Attorney General Eric Holder and New York Attorney General Eric T. Schneiderman (Am. Compl. at 6).  Plain-tiff attaches to his Amended Complaint a letter to Attorney General Schneiderman dated June 13, 2014 (Am. Compl. at 9) and a second letter to Attorney General Schneiderman dated July 1, 2014 (Am. Compl. at 10).  Plaintiff also alleges that he sent a Freedom of Information Law request to the DEA seeking the letter that the Amtrak employee told him he would receive (Am. Compl. at 6).  He also attached an undated letter to the "Duty Dept" (Am. Compl. at 11).[3]  In these letters he states that the money was not involved in or the product of a crime, and that it was confiscated for "no reason" (Am. Compl. at 9-10).

---

[3]Plaintiff does not identify the agency to which he ad-dressed this letter.

III.  Analysis

   A.  Legal Standard

        The standards applicable to a motion to dismiss pursu-

ant to Rule 12(b)(6) are well-settled and require only brief

review.

> When deciding a motion to dismiss under Rule
> 12(b)(6), [the Court] must accept as true all well-
> pleaded factual allegations of the complaint and draw
> all inferences in favor of the pleader.  See City of
> Los Angeles v. Preferred Communications, Inc., 476 U.S.
> 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree
> v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490,
> 53 L.Ed.2d 557 (1977) (referring to "well-pleaded
> allegations"); Mills v. Polar Molecular Corp., 12 F.3d
> 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed
> to include any written instrument attached to it as an
> exhibit or any statements or documents incorporated in
> it by reference.'"  Int'l Audiotext Network, Inc. v.
> Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)
> (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949
> F.2d 42, 47 (2d Cir. 1991)).  The Court also may con-
> sider "matters of which judicial notice may be taken."
> Leonard T. v. Israel Discount Bank of New York, 199
> F.3d 99, 107 (2d Cir. 1999) (citing Allen v. West-
> Point-Pepperill, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).
> In order to avoid dismissal, a plaintiff must do more
> than plead mere "[c]onclusory allegations or legal
> conclusions masquerading as factual conclusions."
> Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333
> (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's
> Federal Practice ¶ 12.34[a] [b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.) (first alteration

added); see also In re Elevator Antitrust Litig., 502 F.3d 47, 50

(2d Cir. 2007) (per curiam); Johnson & Johnson v. Guidant Corp.,
525 F. Supp. 2d 336, 345-46 (S.D.N.Y. 2007) (Lynch, D.J.).

   The Supreme Court has clarified the proper mode of
inquiry to evaluate a motion to dismiss pursuant to Rule
12(b)(6), which uses as a starting point the principle that "[a]
pleading that states a claim for relief must contain . . . a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed.R.Civ.P. 8(a).

> [I]n Bell Atl[antic] Corp. v. Twombly, 550 U.S. 544,
> 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court
> disavowed the well-known statement in Conley v. Gibson,
> 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)[,]
> that "a complaint should not be dismissed for failure
> to state a claim unless it appears beyond doubt that
> the plaintiff can prove no set of facts in support of
> his claim which would entitle him to relief."  550 U.S.
> at 562.  Instead, to survive a motion to dismiss under
> Twombly, a plaintiff must allege "only enough facts to
> state a claim to relief that is plausible on its face."
> Id. at 570.

Talley v. Brentwood Union Free Sch. Dist., 08 Civ. 790, 2009 WL
1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the
> speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful
> in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

In evaluating a motion under Rule (12)(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims. Fahs Constr. Grp., Inc. v. Gray, 725 F.3d 289, 290 (2d Cir. 2013) (per curiam). A claim is plausible when its factual content "allows the court to draw the reasonable infer-ence that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability require-ment,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, supra, 556 U.S. at 678 (internal quotations omitted). Accord-ingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, supra, 556 U.S. at 679 (alteration in original), quoting Fed.R.Civ.P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions," however.  Ashcroft v. Iqbal, supra, 556 U.S. at 679; Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).  As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, supra, 556 U.S. at 679.

Nevertheless, where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims the allegations suggest.  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (per curiam); Sims v. Blot, 534 F.3d 117, 133 (2d Cir. 2008); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Tracy v. Freshwater, 623 F.3d 90, 100-04 (2d Cir. 2010) (observing that the requirement of "special solici-tude" includes liberal construction of papers, "relaxation of the limitations on the amendment of pleadings," leniency in enforcing procedural rules, and "deliberate, continuing efforts to ensure that a pro se litigant understands what is required of him").

7

B.   Application of the
     Foregoing Principles to
     Plaintiff's Complaint

          Plaintiff has not clearly articulated specific claims

against the Amtrak Defendants, but "[b]ecause 'most pro se

plaintiffs lack familiarity with the formalities of pleading

requirements,' [I] 'must construe [plaintiff's] complaint[]

liberally, applying a more flexible standard to evaluate [its]

sufficiency than [I] would when reviewing a complaint submitted

by counsel.'"   Daise v. Goord, 109 F. App'x 452, 453 (2d Cir.

2004) (summary order), quoting Lerman v. Bd. of Elections, 232

F.3d 135, 140 (2d Cir. 2000).

          1.   Documents Attached
               to Defendants' Brief

          The Amtrak Defendants have submitted a declaration and

several documents in support of their motion to dismiss (Declara-

tion of Ronald E. Joseph, dated December 26, 2014 (Docket Item

25) ("Joseph Decl.")).   The documents include a bank receipt, an

Amtrak Police Department property record for plaintiff's money

and receipt, a letter from the DEA informing plaintiff that his

money was forfeited, a Certificate of Disposition regarding

plaintiff's guilty plea, a letter from Assistant United States

Attorney Vaidya regarding the DEA agents responsible for forfeit-

8

ing plaintiff's money, and an incident report from Amtrak describing a conversation with plaintiff in which an Amtrak employee told plaintiff that the DEA had confiscated his money (Joseph Decl., Exs. A-F).  The Amtrak Defendants contend that all of these documents can be considered on this motion because plaintiff's Amended Complaint "expressly reference[s] said documents and/or the contents therein" (Defendants' Memorandum of Law in Support of Its Motion to Dismiss, dated December 26, 2014 (Docket Item 26) ("Defs.' Mem.") at 3).

The Amtrak Defendants' argument does not articulate the correct standard for determining whether documents should be considered on a motion to dismiss.  A document not included in the pleadings may be considered if it is "incorporated in the complaint by reference" or is "integral" to the complaint. Vitrano v. State Farm Ins. Co., 08 Civ. 00103 (JGK), 2008 WL 2696156 at *1 (S.D.N.Y. July 8, 2008) (Koeltl, D.J.), citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

> [For a document] [t]o be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003); see also B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 167 (S.D.N.Y. 1995) (Leisure, J.) ("[A] clear and definite reference to extraneous submissions not attached to the complaint is necessary for a plaintiff to assure their consideration in a motion to dismiss.").  "[L]imited quotation" of documents not attached to the complaint "does not consti-

tute incorporation by reference." Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985); see also In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008) ("[The extraneous document] was not attached to the [complaint] or quoted in full therein. . . . Plaintiffs' limited and indirect citations to [this document] . . . do not constitute incorporation by reference.").

Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (Leisure, D.J.) (first two alterations added).

The only document specifically referenced in the Amended Complaint that the Amtrak Defendants have submitted is the bank receipt, which plaintiff cites as an item that was confiscated from him.  "[S]cant reference[, however,] does not meet the high bar courts have set to recognize documents extraneous to a complaint as 'incorporated in it by reference.'"  Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, supra, 265 F.R.D. at 123-24, citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006); In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008) (Kram, D.J.) (finding a report that was quoted in part in the complaint and was relevant to the litigation was not incorporated by reference in the complaint).

A document is integral to the complaint if the complaint "relie[s] heavily upon its terms and effect." L-7 De-

signs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011);
accord Jewish People for the Betterment of Westhampton Beach v.
Vill. of Westhampton Beach, 778 F.3d 390, 393 n.1 (2d Cir. 2015)
(per curiam); Chambers v. Time Warner, Inc., 282 F.3d 147, 153
(2d Cir. 2002).  The only document that arguably is integral to
the Amended Complaint is the bank receipt, but consideration of
that document does not alter the analysis of the Amtrak Defen-
dants' arguments.

     Accordingly, I do not consider the documents attached
to the Amtrak Defendants' brief on this motion.

     2.  Section 1983

     Plaintiff's allegations can be read as asserting a
claim under 42 U.S.C. § 1983 for the unlawful seizure of his
property.

     Section 1983 provides that:

          Every person who, under color of any statute,
     ordinance, regulation, custom, or usage, of any State
     . . . subjects, or causes to be subjected, any citizen
     of the United States or other person within the juris-
     diction thereof to the deprivation of any rights,
     privileges, or immunities secured by the Constitution
     and laws, shall be liable to the party injured . . . .

     In order to state a claim under Section 1983, a plain-
tiff must allege two essential elements:  "(1) the conduct
complained of must have been committed by a person acting under

color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994); accord Jainity v. Sarway, 13-CV-0089 (ENV), 2013 WL 816216 at *2 (E.D.N.Y. Mar. 5, 2013); McAuliffe v. Pomposello, 10 Civ. 8721 (JSR), 2011 WL 4633867 at *3 (S.D.N.Y. Oct. 4, 2011) (Rakoff, D.J.), quoting West v. Atkins, 487 U.S. 42, 48 (1988); Sullivan v. City of New York, 10 Civ. 0038 (NRB), 2011 WL 3806006 at *2 (S.D.N.Y. Aug. 29, 2011) (Buchwald, D.J.). The Amtrak Defendants appear to agree that the first element has been met, namely that the conduct in question was committed by persons acting under color of state law.[4] With respect to the second element, reading plaintiff's Amended Complaint leniently, plaintiff alleges that the Amtrak Defendants violated the Fourth Amendment and deprived him of property without due process.[5]

------

[4]The Amtrak Defendants do not contest this element, and in their brief point out that Amtrak officers are police officers pursuant to N.Y. Crim. Pro. L. § 1.20(34)(p), which defines police officers as "[p]ersons appointed as railroad policemen pursuant to section eighty-eight of the railroad law" (Defs.' Mem. at 8). See also DeSilvis v. Nat'l R.R. Passenger Corp., 97 F. Supp. 2d 459, 460 n.2 (S.D.N.Y. 2000) (Buchwald, D.J.) ("Amtrak is also a state actor for purposes of liability under [S]ection 1983."); Merola v. Nat'l R.R. Passenger Corp., 683 F. Supp. 935, 940-41 (S.D.N.Y. 1988) (Cedarbaum, D.J.).

[5]The Amtrak Defendants offer responses to what they contend
(continued...)

a.   Fourth Amendment

Plaintiff argues that "[t]o seize currency without probable cause is in violation of the Fourth Amendment right[] to be free from unreasonable seizures" (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated January 8, 2015 (Docket Item 32) ("Pl.'s Mem.") at 5).[6]

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Jones v. Ng, 14 Civ. 1350 (AJP), 2015 WL 998467 at *10 (S.D.N.Y. Mar. 5,

_____

(...continued)
are plaintiff's claims of false arrest and excessive force (Defs.' Mem. at 14, 17-18).  However, I need not address these arguments because plaintiff's Amended Complaint, even if read leniently, does not allege claims for false arrest or excessive force.  There are no factual allegations to support either claim. While plaintiff's Amended Complaint contains conclusory allegations of injuries including pain and suffering, mental anguish, emotional distress, and cruel and unusual punishment, the gravamen of his complaint is clearly the confiscation of the money he had in his pocket at the time of his arrest.  See Ferrera v. Fisher, 13 Civ. 3055 (PAE), 2014 WL 1303436 at *3 (S.D.N.Y. Apr. 1, 2014) (Engelmayer, D.J.) ("Courts may not, however, read into pro se submissions claims inconsistent with the pro se litigant's allegations or arguments that the submissions themselves do not 'suggest.'" (citations omitted)), quoting Pabon v. Wright, supra, 459 F.3d at 248 and citing Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005).

[6]Because plaintiff's Memorandum of Law is not serially paginated, I use the page numbers assigned by the Court's ECF system.

13

2015) (Peck, M.J.) (alteration in original), quoting U.S. Const.
amend. IV.  A search incident to a lawful arrest is well-estab-
lished as reasonable under the Fourth Amendment, United States v.
Robinson, 414 U.S. 218, 235-36 (1973) ("A custodial arrest of a
suspect based on probable cause is a reasonable intrusion under
the Fourth Amendment; that intrusion being lawful, a search
incident to the arrest requires no additional justification.");
United States v. Davenport, 303 F. App'x 42, 44 (2d Cir. 2008)
(summary order); United States v. Ford, 96 CR. 672 (LBS), 1997 WL
538813 at *7 (S.D.N.Y. Aug. 29, 1997) (Sand, D.J.), and plaintiff
does not contest the lawfulness of his arrest.  In addition, it
permissible to seize non-contraband items found in such a search.
United States v. Perea, 986 F.2d 633, 643-44 (2d Cir. 1993);
Hayes v. O'Connor, 03 Civ. 1371 (SHS), 2004 WL 2334078 at *5
(S.D.N.Y. Oct. 14, 2004) (Stein, D.J.) ("[W]hen a person is
arrested in a place other than his home, the arresting officers
may impound the personal effects that are with him at the time to
ensure the safety of those effects.").  Thus, the initial seizure
of plaintiff's money does not violate the Fourth Amendment.

     Moreover, "[t]he Second Circuit has held that where an
initial seizure of property was reasonable, [as it was here],
defendants' failure to return the items does not, by itself,
state a separate Fourth Amendment claim of unreasonable seizure."

Rutigliano v. City of New York, 07 Civ. 4614 (JSR), 2008 WL
110946 at *4 (S.D.N.Y. Jan. 2, 2008) (Rakoff, D.J.), aff'd, 326
F. App'x 5 (2d Cir. 2009) (summary order) (internal alterations
and quotation marks omitted), quoting Shaul v. Cherry Valley-
Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004).
Thus, "'[t]o the extent the Constitution affords [a plaintiff]
any right with respect to a government agency's retention of
lawfully seized property, it would appear to be procedural due
process.'" McMillan v. City of New York, 03 Civ. 626 (SLT)(LB),
2009 WL 261478 at *11 (E.D.N.Y. Feb. 4, 2009) (second alteration
in original), quoting Shaul v. Cherry Valley-Springfield Cent.
Sch. Dist., supra, 363 F.3d at 187; accord Ahlers v. Rabinowitz,
684 F.3d 53, 62 (2d Cir. 2012); Cabral v. City of New York, 12
Civ. 4659 (LGS), 2014 WL 4636433 at *9 (S.D.N.Y. Sept. 17, 2014)
(Schofield, D.J.); Bensam v. Bharara, 12 Civ. 5409 (ALC)(JLC),
2014 WL 1243790 at *3 (S.D.N.Y. Mar. 25, 2014) (Carter, D.J.).

          Accordingly, plaintiff has not stated a claim against
the Amtrak Defendants for a violation of the Fourth Amendment.

          b.   Procedural Due Process

          Plaintiff also argues that "the Government may not
deprive individuals of private property without Due Process"
(Pl.'s Mem. at 5).  He argues that "the agency must give a

personal written notice of seizure and information on the appli-
cable procedures to any party who appears to have an interest in
the seized property" (Pl.'s Mem. at 5).

"[T]o succeed on a procedural due process claim, a
plaintiff must show that he '1) possessed a protected liberty or
property interest 2) of which he was deprived without due pro-
cess.'" McMillan v. City of New York, supra, 2009 WL 261478 at
*11, quoting Rutigliano v. City of New York, supra, 2008 WL
110946 at *4; accord Ahlers v. Rabinowitz, supra, 684 F.3d at 62;
Cabral v. City of New York, supra, 2014 WL 4636433 at *9.

> [C]ourts in this Circuit continue to find that a plain-
> tiff can succeed on a due process claim under § 1983 by
> demonstrating:  "(1) that the City arrested him and
> seized his property; (2) that it did not give him a
> voucher with the constitutionally-required notice
> printed on it; (3) that it did not otherwise notify him
> of the procedures he could follow to reclaim his prop-
> erty; and (4) that he was deprived of the property as a
> result." Frith, 2011 WL 3477083, at *3, 5 . . . [;]
> see also [Butler] at 702 ("[a]n arrestee who fails to
> receive a voucher, . . . would not know of the need to
> make a demand on the property clerk and the burden on
> the City either to return the property or to bring a
> judicial action") (emphasis added).

Contant v. City of New York, 09-CV-2851 (WKF)(LB), 2012 WL
1158756 at *6-*7 (E.D.N.Y. Mar. 16, 2012) (Report & Recommenda-
tion), adopted at, 2012 WL 1165623 (E.D.N.Y. Apr. 9, 2012);
accord Sommerville v. Wright, 12-CV-165 (KAM)(JMA), 2014 WL

16

794275 at *6 (E.D.N.Y. Feb. 25, 2014) (adopting Report & Recom-
mendation).

      Plaintiff clearly alleges that the DEA failed to
provide sufficient notice before forfeiting his property, but it
is less clear whether he also alleges that Amtrak failed to
notify him of the procedures to reclaim his money.  Plaintiff
does not specifically argue that he should have received a
voucher from Amtrak explaining how to obtain his money; however,
the unmistakable crux of his complaint is that his non-contraband
property was taken by Amtrak and the Amtrak Defendants provided
no information as to how to contest its allegedly wrongful
confiscation.  See Sommerville v. Wright, supra, 2014 WL 794275
at *8 ("Although plaintiff's pro se complaint does not explicitly
deny receiving sufficient notice, it is reasonable to infer from
the complaint that plaintiff did not receive a property voucher
when his [property] was seized.").

      The Amtrak Defendants argue as follows in support of
their motion to dismiss plaintiff's procedural due process claim:

> Assuming arguendo, that Plaintiff has stated a
> claim against Officers Coleman, or Loney or Amtrak for
> deprivation of property without due process, which he
> has not, Defendants are still not liable for depriva-
> tion of property without due process because (a) Defen-
> dants were not in possession of Plaintiff's money, and
> (b) Defendants gave Plaintiff notice how to repossess
> his money.

(Defs.' Mem at 10).  Although this syntax is somewhat fractured, the Amtrak Defendants appear to argue that plaintiff's procedural due process claim should be dismissed because (1) plaintiff does not allege the Amtrak Defendants were in possession of plaintiff's money and (2) the Amtrak Defendants told plaintiff what he had to do to assert a claim for the return of the money.

Assuming that the Amtrak Defendants' have properly identified the elements of a procedural due process claim, their argument fails because it ignores the allegations in the Amended Complaint.

The Amended Complaint alleges:

On September 15, 2011, I was arrested by the Amtrak Police Officers P.O. Coleman and P.O. Looney for Assault and Resisting Arrest.  I had $10,000 dollars in my front pocket along with my bank receipt showing the money I had was withdrawn from the bank.  I could not take the money with me so officer[]s Coleman and Looney confiscated it along with my bank receipt.

I was informed by them that I could come pick up my money upon my release.  When I was released from custody I went back to the Amtrak station to get my money and receipt, however, a light skinned Spanish lady told me that the Drug Enforcement Agency came and confiscated my money.

She also explicated to me that I would receive a letter in the mail explicating how to get my money back, however, I never received any letters in the mail.

(Am. Compl. at 4).

With respect to the issue of possession of plaintiff's money, the Amended Complaint expressly alleges that Officers Coleman and Looney "confiscated" plaintiff's money.  To confiscate means "[t]o seize (private property) for the public treasury . . . [or] [t]o seize by or as if by authority."  Webster's II New Riverside University Dictionary 297 (1994) ("Webster's").  To seize means "[t]o take quick and forcible possession of." Webster's at 1057.  Even if I were not required to construe the Amended Complaint liberally, the foregoing does allege that Officers Coleman and Looney took possession of plaintiff's money.[7]

With respect to the second element of a procedural due process claim -- notice of the procedures that must be followed for the return of the money -- the Amended Complaint also alleges that the Amtrak Defendants failed to provide this notice.  In support of their motion, the Amtrak Defendants again ignore the words in the Amended Complaint.  The Amended Complaint alleges that "light skinned Spanish lady" told plaintiff that he  "would receive a letter in the mail explicating how to get [his] money

---

[7]Fairly read, the Amended Complaint does allege that Coleman and Looney's possession of plaintiff's money was temporary and that the money was subsequently turned over to the DEA.  The Amtrak Defendants, however, make no argument that transfer of the property to a third party defeats a procedural due process claim or that permanent possession is necessary to state such a claim.

back, however, [he] never received any letters in the mail."
Advising an individual that he will receive instructions to
reclaim his property in the future is simply not equivalent to
providing instructions to reclaim property.  The former statement
describes an event that is expected to take place in the future
and which may or may not actually occur.  Just as a passenger's
statement to an Amtrak conductor that the passenger will mail
Amtrak a ticket in the future is not the equivalent of actually
presenting a ticket, Amtrak's statement to plaintiff that he will
receive instructions in the future is not the equivalent of
providing the instructions.

   3.   Conversion

      The Amtrak Defendants argue that Amtrak had legal
authority over plaintiff's property at the time of his arrest,
and, therefore, cannot be liable for conversion (Defs.' Mem. at
7-8).

      "In New York, conversion is the unauthorized assumption
and exercise of the right of ownership over goods belonging to
another to the exclusion of the owner's rights." Bandler v. BPCM
NYC, Ltd., 12 Civ. 3512 (PGG), 2014 WL 5038407 at *12 (S.D.N.Y.
Sept. 29, 2014) (Gardephe, D.J.) (internal quotation marks
omitted), citing Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d

400, 403-04 (2d Cir. 2006) and quoting AD Rendon Commc'ns, Inc.
v. Lumina Ams., Inc., 04 Civ. 8832 (KMK), 2007 WL 2962591 at *4
(S.D.N.Y. Oct. 10, 2007) (Karas, D.J.).  To state a claim for
conversion, plaintiff must allege that "(1) the property subject
to conversion is a specific identifiable thing; (2) plaintiff had
ownership, possession or control over the property before its
conversion; and (3) defendant exercised an unauthorized dominion
over the thing in question, to the alteration of its condition or
to the exclusion of the plaintiff[']s rights."  AD Rendon
Commc'ns, Inc. v. Lumina Ams., Inc., supra, 2007 WL 2962591 at *4
(internal quotation marks and citation omitted), quoting Moses v.
Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (Scheindlin,
D.J.); accord Colavito v. N.Y. Organ Donor Network, Inc., 8
N.Y.3d 43, 49-50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100
(2006).

   The Amtrak Defendants contend that they had authorized
dominion over plaintiff's money and receipt because police
officers may seize property under the Fourth Amendment if the
seizure is incidental to an arrest (Defs.' Mem. at 7-8).  As
discussed above, the initial seizure of plaintiff's money did not
violate the Fourth Amendment.

   Plaintiff, however, contends in his opposition brief
that the Amtrak Defendants improperly transferred his money to

the DEA (Pl.'s Mem. at 4).  He also states that the "police failed to secure an Order from a State Court authorizing the transfer" (Pl.'s Mem. at 4).  The Amtrak Defendants contend that plaintiff failed to allege in his Amended Complaint that Amtrak improperly transferred his money and that that allegation, therefore, cannot be considered for the purposes of this motion (Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss, dated January 16, 2015 (Docket Item 35) ("Defs.' Reply") at 2).

     "In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  Burgess v. Goord, 98 Civ. 2077 (SAS), 1999 WL 33458 at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (Scheindlin, D.J.) (internal quotation marks omitted).  Plaintiff is proceeding pro se, and, therefore, I consider his brief to be an amendment or supplement to his Amended Complaint.  See Rosales v. Kikendall, No. 13-3197-pr, 2015 WL 1344643 at *3 (2d Cir. Mar. 26, 2015) (summary order) ("[T]he district court should have treated Rosales's opposition as a constructive motion to amend his pleadings."); Obot v. Sallie Mae, No. 14-853, 2015 WL 548202

at *2 (2d Cir. Feb. 11, 2015) (summary order); Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014).

"When a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made." Regions Bank v. Wieder & Mastroianni, P.C., 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007) (Conner, D.J.), aff'd, 268 F. App'x 17 (2d Cir. 2008) (summary order), citing MacDonnell v. Buffalo Loan, Tr. & Safe Deposit Co., 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908); see also E. Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1011-12 (S.D.N.Y. 1992) (Sweet, D.J.), citing Gonzalez v. Port Auth. of New York & New Jersey, 119 A.D.2d 628, 629, 500 N.Y.S.2d 782, 783 (1986) ("Where a defendant lawfully obtains possession of property and has not wrongfully disposed of it, the action is not maintainable unless the defendant had possession of the property at the commencement of the action."). Plaintiff has alleged that the Amtrak Defendants wrongfully transferred his non-contraband money to the DEA for forfeiture. The Amtrak Defendants do not explain how the transfer was proper, nor do they argue that they had probable cause to believe that the money was contraband.

Accordingly, I recommend that the Amtrak Defendants' motion to dismiss plaintiff's claim of conversion be denied.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that the Amtrak Defendants' motion be granted to the extent the Amended Complaint alleges a Fourth Amendment claim and denied in all other respects.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 1350, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

24

<u>Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension</u>

<u>Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v.</u>

<u>Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair</u>

<u>Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714

F.2d 234, 237-38 (2d Cir. 1983) (per <u>curiam</u>).

Dated:   New York, New York
         August 6, 2015

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge



Copies mailed to:

Mr. Christopher Chunn
15A2596
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York  12051-0999

Ronald E. Joseph, Esq.
Jonathan B. Adler, Esq.
Landman, Corsi, Ballaine & Ford, P.C.
120 Broadway, 27th Floor
New York, New York 10271

Kirti V. Reddy, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York  10007