USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER CHUNN,

              *Plaintiff*,

    - *against* -

AMTRAK, *et al.*,

              *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14 Civ. 6140 (PAC) (HBP)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Christopher Chunn brings this action against defendants Amtrak and Amtrak Officers Looney and Coleman ("Amtrak Defendants"), to recover money that was confiscated and turned over to the Drug Enforcement Administration ("DEA") when Chunn was arrested in New York's Penn Station in 2011. The matter was referred to Magistrate Judge Henry B. Pitman, and on November 28, 2016, the Amtrak Defendants moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

      On May 11, 2017, Magistrate Judge Pitman issued a Report and Recommendation ("R&R") recommending that the Court grant the Amtrak Defendants' motion and, to the extent Chunn's reply could be construed as a motion to amend the complaint, deny Chunn's motion. Chunn filed timely objections to the R&R on June 26, 2017. After Magistrate Judge Pitman issued the R&R and Chunn filed his objections, the DEA agreed to return the money that Amtrak confiscated from Chunn in 2011. Nevertheless, Chunn continues to request a judgment against Amtrak regarding his claims that Amtrak violated his due process rights and committed conversion under New York law.

      The Court has reviewed the R&R and considered Chunn's objections. The Court adopts the R&R and grants the Amtrak Defendants' motion for summary judgment.

1

## BACKGROUND

### A. Facts[1]

On September 15, 2011, Amtrak Officers Coleman and Looney arrested Chunn in New York's Penn Station for disorderly conduct, trespassing, and resisting arrest. During a search incident to the arrest, the officers discovered and seized $10,400 in cash. Upon being notified of the cash, Amtrak Sergeant Sharon Patterson contacted Alex Colon, an Amtrak officer who is also a member of the Amtrak Police Department-DEA joint task force. Colon initiated a brief investigation into the source of the funds. The parties dispute the extent of the investigation, but in any event, the investigation resulted in Colon advising Patterson that the DEA was seizing the $10,400. In response to Colon's request, Patterson gave Colon the $10,400. Colon transported the cash to the DEA's New York Field Office to begin administrative forfeiture proceedings.

Following his arrest, Chunn returned to the Amtrak police office at Penn Station and inquired about the $10,400 that had been confiscated. He was advised that the DEA had his money and that he would receive a letter in the mail regarding the process by which he could seek return of the money. Ultimately, Chunn did not timely file a claim with the DEA for the return of his money, and the DEA forfeited the $10,400.

### B. Procedural History

Chunn commenced this action *pro se* on July 24, 2014 against Amtrak, the DEA, Amtrak Officers Coleman and Looney, and "John Doe," whom Chunn identified as being employed by the DEA. ECF 1. On November 28, 2014, Chunn amended his complaint to substitute Colon and Special Agent John Hannan for "John Doe." ECF 16. Chunn also specified that he would like to include in the action "any supervising . . . officer or Agent who gave the authorization or order for [Colon and Hannan] to take custody of [the] money and not return it." *Id.* at 4.

---

[1] All facts are taken from the R&R unless otherwise indicated.

On December 26, 2014, the Amtrak Defendants moved to dismiss Chunn's claims against them. ECF 24. On August 6, 2015, Magistrate Judge Pitman issued an R&R recommending that the motion to dismiss be granted with respect to Chunn's Fourth Amendment claim and denied with respect to his Due Process and conversion claims. *Chunn v. Amtrak*, 14 Civ. 6140 (PAC) (HBP), 2015 WL 10520663 at *5–10 (S.D.N.Y. Aug. 6, 2015) (Report & Recommendation). The Court adopted the R&R in full. *Chunn v. Amtrak*, 14 Civ. 6140 (PAC) (HBP), 2016 WL 1071029 (S.D.N.Y. Mar. 17, 2016).

On January 18, 2016, Chunn moved for summary judgment against all defendants and to set aside the forfeiture proceedings. ECF 64. The DEA, Colon, and Hannan ("DEA Defendants") cross-moved for summary judgment, ECF 67, whereas the Amtrak Defendants did not respond to Chunn's motion. On July 14, 2016, Magistrate Judge Pitman issued an R&R recommending that the Court deny Chunn's motion and grant the DEA Defendants' motion. *Chunn v. Amtrak*, 14 Civ. 6140 (PAC) (HBP), 2016 U.S. Dist. LEXIS 92419 at *2 (S.D.N.Y. July 14, 2016) (Report & Recommendation). On August 4, 2016, the Court granted an application by Chunn for the appointment of *pro bono* counsel for the limited purpose of filing objections to the R&R. ECF 94.

On May 4, 2017, the Court stayed all proceedings regarding the DEA Defendants pending the outcome of settlement discussions. ECF 134. Upon settlement, Chunn stipulated to the dismissal of his claims against the DEA Defendants, and the DEA agreed to return the $10,400 to Chunn. ECF 140, 146-2. These developments rendered the July 14, 2016 R&R moot as to the DEA Defendants.

On November 28, 2016, the Amtrak Defendants filed the instant motion seeking summary judgment with respect to the Due Process and conversion claims against them. ECF 105. On Februrary 24, 2017, Chunn responded to the Amtrak Defendants' motion. ECF 123. Through *pro bono* counsel, Chunn conceded that officers Coleman and Looney may be entitled to summary judgment, but he argued that Amtrak was not entitled to summary judgment and that he should be permitted to amend his complaint to add Sergeant Patterson as a defendant. *Id.* at 8, 20, 25.

3

On May 11, 2017, Magistrate Judge Pitman issued the instant R&R recommending that the Court grant the Amtrak Defendants' motion for summary judgment in its entirety and deny Chunn's request to add Sergeant Patterson as a defendant. ECF 137. Chunn submitted objections to the R&R on June 26, 2017. ECF 141.

## DISCUSSION

### I. Legal Standards

#### A. Review of Report and Recommendation

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely objection has been made to the magistrate judge's recommendations, the court must review the contested portions *de novo*. *Id.*; *Pizzaro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). Moreover, "[w]hen a party makes only conclusory or general objections . . . the [c]ourt will review the Report strictly for clear error." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citations omitted).

#### B. Summary Judgment Standard

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."

4

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "The non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial. If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate." *Citizens Bank*, 927 F.2d at 710 (internal citations omitted).

### C. Procedural Due Process

To prevail on a procedural due process claim, plaintiffs "must show they possessed a protected property interest, and that they were deprived of that interest without due process." *Manza v. Newhard*, 915 F. Supp. 2d 638, 646 (S.D.N.Y. 2013) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir.2001)). Due process entails both notice and an opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "[A]n opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes*, 407 U.S. at 80 (quotation omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (alteration in original) (quotation omitted).

### D. Conversion

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (N.Y. 1995)). "When a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made." *Regions*

5

*Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008) (summary order).

## II. Analysis

As an initial matter, Chunn does not object to the recommendations regarding his claims against officers Coleman and Looney, and the Court finds no clear error in Magistrate Judge Pitman's analysis and recommendation that they are entitled to summary judgment. Thus, the Court will review *de novo* only Chunn's Due Process and conversion claims against Amtrak and his request to amend his complaint.

### A. Procedural Due Process Claim

Magistrate Judge Pitman concluded that Amtrak is entitled to summary judgment on the Due Process claim because Amtrak was not required to provide Chunn with notice or a hearing before transferring the money to the DEA. ECF 137 at 21–22. Magistrate Judge Pitman noted that Amtrak legally seized the funds pursuant to a search incident to a lawful arrest and that the transfer of the funds to the DEA "effected an adoption of Amtrak's seizure by the DEA." *Id.* at 19, 21. Citing an Eighth Circuit case, *Madewell v. Downs*, Magistrate Judge Pitman concluded that "due process does not require any notice of the federal adoption of a seizure and an opportunity to protest." *Id.* at 21 (quoting 68 F.3d 1030, 1039 (8th Cir. 1995)). Rather, post-seizure proceedings, pursuant to 21 U.S.C. § 881 and 18 U.S.C. §§ 981–87, are sufficient to satisfy due process requirements. *Id.*

Chunn objects that *Madewell* is inapposite because that case held only that *the DEA* did not violate the plaintiff's due process rights by adopting funds lawfully seized by state police, whereas here Chunn is arguing that *Amtrak* violated his due process rights by transferring the funds to the DEA without notice or a hearing, which would have allowed him "to explain that the money had nothing to do with drugs." ECF 141 at 18–19. Chunn points out that *Madewell* expressly noted that "[a]lthough . . . the DEA's adoption of the seized currency did not violate Madewell's due process rights, the question of whether the [state police] defendants violated Madewell's due process rights

6

when they transferred the currency to the DEA is a different question." *Id.* at 19 (quoting *Madewell*, 68 F.3d at 1040). Chunn suggests that this "different question" is presented here, whereas the court in *Madewell* "ultimately rejected the claims against the state officers on grounds not relevant here." *Id.* at 19 n.10.

*Madewell*'s reasoning in rejecting those claims, however, is indeed relevant here. Although plaintiff in *Madewell* did not focus on the lack of notice and opportunity to be heard, plaintiff did argue, similar to Chunn, that the state officers lacked legal authority to release his money to the DEA and that "the end result of the summary judgment ruling below has been to allow seizure of [the plaintiff's] money without any showing that it was connected to a drug transaction." *Madewell*, 68 F.3d at 1040. In rejecting the plaintiff's assertion that "a further due process requirement prior to transfer of seized property to federal control is that there be a judicial determination that the seized property was connected with a drug transaction," the court stated that it "decline[d] to add such a requirement, because that is precisely the determination that must be made in the proceedings pursuant to 21 U.S.C. § 881 before federal forfeiture may be accomplished, and § 881 establishes the process due the claimant in making that determination." *Id.* at 1044–45. Although the court referred only to judicial determinations, this reasoning suggests that due process does not require other pre-seizure proceedings to determine whether property is subject to forfeiture, such as an opportunity to be heard in a hearing.

Indeed, as Magistrate Judge Pitman recognized, ample authority supports the proposition that the post-seizure proceedings mandated by 21 U.S.C. § 881 and 18 U.S.C. § 981 are sufficient to satisfy due process. ECF 137 at 22–23; *see, e.g., Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 989 (S.D. Ind. 2008) ("[The plaintiff's] due process rights were protected when the federal government notified him of the federal forfeiture proceeding and gave him an opportunity to respond."). Thus, Amtrak did not violate Chunn's due process rights by failing to provide him with

notice and an opportunity to be heard before transferring his funds to the DEA, and it is entitled to summary judgment on this claim.

**B. Conversion Claim**

Magistrate Judge Pitman recommends that Amtrak be granted summary judgment on Chunn's conversion claim because Chunn could not satisfy the essential element of a conversion claim that the transfer of property be unauthorized or unlawful. ECF 137 at 26–28. Magistrate Judge Pitman determined that Amtrak's transfer of the funds to the DEA was not wrongful because 18 U.S.C. § 981(b)(2)(C) authorized the DEA to take possession of the funds that had been lawfully seized by Amtrak. *Id.*

First, Chunn objects that Section 981 is relevant only if there has been a "seizure," and he argues that the DEA did not make any such seizure because (1) a seizure requires a "meaningful interference with an individual's possessory interests," *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984), (2) Amtrak, rather than Chunn, had sole possessory interests in the property because Chunn no longer had a right to control it after it was lawfully seized by Amtrak, and (3) the DEA received the funds from Amtrak as the result of a voluntary transfer rather than an interference with Amtrak's possessory interests. ECF 141 at 12–13. The cases cited by Chunn, however, interpret the term "seizure" as used in the Fourth Amendment rather than Section 981, and thus they do not establish that "seizure" as used in Section 981 does not encompass voluntary transfers from a state actor to the federal government. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) ("[T]he meaning of the same words well may vary to meet the purposes of the law." (alterations and internal citations omitted)). Indeed, Section 981 expressly contemplates voluntary transfers of property to the federal government from state actors exercising present possessory interests. It authorizes the Attorney General to seize property subject to forfeiture and notes that a warrant is not required for such a seizure if "the property was lawfully seized by a State or local law

8

enforcement agency and transferred to a Federal agency." 18 U.S.C. § 981(b)(1), (2)(C). Thus, Chunn's objection to the relevance of Section 981 is unpersuasive.

Second, Chunn objects that the R&R misapplied New York law because wrongful intent is not an element of conversion. ECF 141 at 14; *see Filner v. Shapiro*, 633 F.2d 139, 141 (2d Cir. 1980) ("Wrongful intent is unnecessary. All that the owner need show is that he has been deprive of his property by the defendant's unauthorized exercise of dominion and control over it." (citations omitted)). The R&R, however, did not reference wrongful "intent." It simply stated that Amtrak's transfer of the funds was not "wrongful." ECF 137 at 28. For a transfer of property to be considered a conversion, New York law requires the transfer to be wrongful, at least in the sense that "the transferor knew the transfer would violate the superior property rights of another, yet disposed of the property anyway." *Regions Bank*, 526 F. Supp. 2d at 415.

Chunn argues that a jury could conclude that this requirement is satisfied because Amtrak disposed of Chunn's property "without authorization" and "despite knowing that there was no probable cause to connect the money to drugs, and thus no basis for the DEA to claim authority to seize it." ECF 141 at 16. Chunn further states that Section 981 provides authorization to the DEA to receive property from a state actor only if the state actor has "lawfully . . . transferred" the property. *Id.* at 14; 18 U.S.C. § 981(b)(2)(C). However, Chunn fails to direct the Court to any authority listing the requirements for a transfer to be "lawful" within the meaning of Section 981 or suggesting that a state actor must believe that there is probable cause connecting property to drugs before it can lawfully transfer the property to the DEA.

In contrast, the court in *Madewell* provided examples of circumstances that would constitute unlawful transfers. First, it noted that "only a state *forfeiture* action or comparable *in rem* proceeding for disposition of the property will preclude federal forfeiture jurisdiction, making a transfer of the property in question to federal control an affront to state court jurisdiction and a violation of a claimant's due process rights." 68 F.3d at 1042. Second, it noted that in another case, "the Seventh

9

Circuit Court of Appeals held that Illinois law specifically vested control over property seized in the courts, and therefore concluded that state or local law enforcement agencies could not turn over seized property for federal forfeiture without a 'turnover' order from the court." *Id.* (citing *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120, 122–23 (7th Cir. 1991)). Here, no state forfeiture action was initiated, and Chunn points to no New York law requiring Amtrak to receive a turnover order.[2] Therefore, Chunn's second objection is likewise unpersuasive, and Amtrak is entitled to summary judgment on the conversion claim.

### C. Amendment of Complaint

To the extent that Chunn's reply to the Amtrak Defendants' summary judgment motion could be construed as a motion to amend the complaint to add Sergeant Patterson as a defendant, Magistrate Judge Pitman recommended that the Court deny the motion because the proposed amendment would be futile. ECF 137 at 28–29; *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) ("[M]otions to amend should generally be denied in instances of futility . . . ."). Indeed, as Magistrate Judge Pitman recognized, Chunn's proposed claims against Sergeant Patterson are futile because they are time-barred. *See Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) ("In New York, the statute of limitations for conversion is three years."); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("New York's three-year statute of limitations for unspecified personal injury actions governs section 1983 actions in New York." (internal citations omitted)). Moreover, Magistrate Judge Pitman concluded that any amendment cannot relate back to the date of the original complaint because Chunn failed to show that Sergeant Patterson knew or should have known that the action would have been brought against her but for a mistake concerning her identity.

---

[2] Although New York does have a statute that may require such orders in certain circumstances, it applies only when a court "receiv[es] property seized pursuant to a search warrant." N.Y. Crim. Proc. Law § 690.55.

10

First, Chunn objects that Magistrate Judge Pitman erred in relying on Federal Rule of Civil Procedure 15(c)(1)(C) instead of New York law. Magistrate Judge Pitman analyzed the relation-back issue, however, under both federal law and New York law and correctly found that Chunn failed to meet the requirements under either standard. ECF 137 at 32–35; *see* Federal Rule of Civil Procedure 15(c)(1)(C) (stating that an amendment relates back to the date of the original pleading when the party to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party"); *Strada v. City of New York*, No. 11-cv-5735 (MKB), 2014 WL 3490306 at *6 (E.D.N.Y. July 11, 2014) ("Under § 203, New York courts allow claims against a new defendant to relate back to timely filed pleadings when . . . the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well." (quotation omitted)).

Second, Chunn maintains that his *pro se* amended complaint is sufficient to apprise Sergeant Patterson that she was an intended party because it expressed a desire to join "any supervising . . . officer or Agent who gave the authorization or order." ECF 141 at 22. The amended complaint was not filed, however, until November 28, 2014, after the three-year statute of limitations expired in September 2014. ECF 16. Magistrate Judge Pitman correctly determined that Chunn's request to amend his complaint was time-barred and should be denied as futile.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation in its entirety. The Amtrak Defendants' motion for summary judgment is granted. Chunn's Complaint is therefore dismissed.[3] The Clerk of Court is directed to enter judgment and terminate this case.

Dated: New York, New York
September 29, 2017

*So ordered*
*Paul A. Crotty*
USDJ

---

[3] As a result, Magistrate Judge Pitman's previous Report and Recommendation of July 14, 2016, recommending denial of Chunn's motion for summary judgment against all defendants, has become moot and requires no ruling.

11